**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DANIEL AVILA, on behalf of himself, and on behalf of all persons similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No.:  13-cv-03566 |
| CITIMORTGAGE, INC., | ) ) | Honorable Ronald A. Guzmán |
| Defendant. | ) ) | |

**DEFENDANT CITIMORTGAGE, INC.'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Plaintiff Daniel Avila ("Plaintiff") is a mortgagor who received a home mortgage loan from Defendant CitiMortgage, Inc. ("CitiMortgage").  On July 4, 2010, a fire damaged his home. CitiMortgage received insurance proceeds under the terms of the mortgage agreement.  Plaintiff hired a contractor, and CitiMortgage released a portion of the insurance proceeds for the contractor to begin making repairs.  However, Plaintiff and his contractor got into a dispute, and Plaintiff refused to allow CitiMortgage to release additional funds for the contractor to continue the repair.  Plaintiff then stopped making payments on his mortgage loan altogether.  Given this, and because any additional repair work was not economically feasible and would have lessened CitiMortgage's security interest, nearly a year later, CitiMortgage applied the remaining insurance proceeds to pay down Plaintiff's outstanding debt.

Plaintiff's only remaining claim in this case is a single breach of contract count (Count II) alleging that CitiMortgage breached the mortgage agreement by using the insurance proceeds to pay down Plaintiff's debt rather than repairing the property.  However, as shown below and in the accompanying Local Rule 56.1(a) Statement of Undisputed Material Facts ("SOF"),

CitiMortgage is entitled to summary judgment on Plaintiff's remaining claim for three independent reasons where the underlying facts are undisputed.

*First*, Plaintiff's claim is barred because he did not provide CitiMortgage with the required notice of the alleged breach and a reasonable opportunity to cure before bringing suit, as mandated by his mortgage agreement. *Second*, CitiMortgage did not breach the agreement by applying the Insurance Proceeds to pay down Plaintiff's outstanding debt because it was not "economically feasible" to repair the property and CitiMortgage's security interest would have been lessened if the insurance proceeds were used for repairs. *Finally*, Plaintiff did not suffer any damages by virtue of having CitiMortgage pay down his debt. Instead, Plaintiff is better off economically than he would have been if the insurance proceeds were used for repairs.

Accordingly, for any of these three independent reasons, CitiMortgage is entitled to summary judgment on Plaintiff's only remaining claim. Indeed, another federal district court recently reached this exact result in granting summary judgment for CitiMortgage in materially identical circumstances. *See Vongohren v. CitiMortgage, Inc.*, 2016 WL 739070 (D. Md. Feb. 25, 2016). As in that case, the Court should grant summary judgment in CitiMortgage's favor and dispose of Plaintiff's lawsuit in its entirety.

## FACTUAL BACKGROUND

## I. PLAINTIFF RECEIVES A MORTGAGE LOAN FROM CITIMORTGAGE.

On February 10, 2005, Plaintiff executed a promissory note (the "Note") with CitiMortgage for $100,500. SOF ¶ 3. On the same day, Plaintiff executed a mortgage agreement (the "Mortgage," and together with the Note, the "Loan") evidencing CitiMortgage's security interest in real property located at 4734 S. Bishop Street, Chicago, Illinois (the "Property"). *Id.* ¶¶ 1, 4. As relevant to this lawsuit, section 5 of the Mortgage governs the use of insurance proceeds in the event of loss or damage to the Property:

In the event of a loss, Borrower shall give prompt notice to the … Lender … Unless Lender and Borrower otherwise agree in writing, any insurance proceeds ... shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction. ... If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due.

*Id.* ¶ 4(b).

## II.    THE PROPERTY IS DAMAGED AND PLAINTIFF RETAINS A CONTRACTOR TO REPAIR THE PROPERTY.

On July 4, 2010, a fire occurred, which damaged the Property. SOF ¶ 10. At the time of the fire, the Property was insured by State Farm Fire & Casualty Company ("State Farm"). SOF ¶ 11. Plaintiff has not lived in the Property since the fire. *Id.* ¶ 10. After the fire, Plaintiff never notified CitiMortgage of the damage to the Property, even though he was required to do so under the Mortgage. *Id.* ¶ 12. Instead, Plaintiff reported the fire only to State Farm. *Id.*

Two days after the fire, on July 6, 2010, Plaintiff executed a document authorizing a contractor, Restore Construction Company, Inc. ("Restore"), to repair the Property. *Id.* ¶ 16. On July 14, 2010, Plaintiff and his wife executed an agreement authorizing Restore to endorse drafts or checks in the name of Plaintiff and his wife and to sign any other papers or instruments related to the repair of the Property. *Id.* ¶ 17. Plaintiff and his wife further agreed that "all checks by the insurance company and/or mortgage company will be issued with Restore Construction Co. as an additional payee." *Id.*

On July 30, 2010, State Farm issued a check in the amount of $154,590.84 (the "Insurance Proceeds") payable to Plaintiff, Restore, and CitiMortgage. *Id.* ¶ 20.

On August 2, 2010, Plaintiff and Restore entered into a side agreement where Restore would pay Plaintiff $10,000 for work Plaintiff would perform on the Property. *Id.* ¶ 18. Restore paid Plaintiff with a $10,000 check, which Plaintiff deposited in his bank account. *Id.*

On August 12, 2010, the City of Chicago brought a lawsuit against Plaintiff and others with interests in the Property seeking "to abate the dangerous and unsafe conditions at the [Property]." *Id.* ¶ 13. Between July 2010 and March 2013, Plaintiff and the Property were cited by the City of Chicago at least 11 times for violations of the City's Municipal Code. *Id.* ¶ 15.

## III. CITIMORTGAGE DISBURSES INSURANCE PROCEEDS TO PLAINTIFF BUT PLAINTIFF REFUSES TO ALLOW RESTORE TO CONTINUE REPAIRS.

On September 29, 2010, CitiMortgage disbursed part of the Insurance Proceeds in the form of a check in the amount of $51,530.28 payable to "Restore Construction, Inc. and Daniel Avila." SOF ¶ 21. Restore cashed the check and began making repairs to the Property. *Id.* ¶¶ 18, 21, 24.

On February 2 and February 8, 2011, CitiMortgage issued checks in the amounts of $12,708.28 and $38,762.00 (respectively) payable to Restore and Plaintiff, representing additional disbursements of the Insurance Proceeds. *Id.* ¶ 22. However, these checks were never cashed. *Id.* ¶ 24. Instead, on March 24, 2011, Plaintiff's wife informed CitiMortgage that she and Plaintiff were holding the two checks because they were unhappy with the repair work that Restore had performed to date. *Id.*

CitiMortgage then notified Plaintiff and his wife that they would need to provide CitiMortgage with certain documentation, including: (1) a letter from Plaintiff to Restore terminating the contract for the repair of the Property; (2) contracting documents for a contractor to replace Restore; (3) an indemnification agreement; (4) a default approval; (5) a certificate of substantial completion; and (5) an IRS Form W-9. *Id.* ¶¶ 25-26. CitiMortgage informed

Plaintiff that it would not release additional funds from the Insurance Proceeds until it received these documents. *Id.* ¶ 25. Plaintiff never provided CitiMortgage with any of the requested documents. *Id.* ¶ 26. He also never resolved his conflict with Restore and never hired any other contractors to repair the Property. *Id.* ¶ 27. Nor did Plaintiff repair the Property himself. *Id.*

## IV. PLAINTIFF DEFAULTS ON HIS MORTGAGE PAYMENTS.

Plaintiff last made his monthly mortgage payment to CitiMortgage on April 1, 2011. SOF ¶ 28. He failed to make his payment on May 1, 2011 and thus defaulted on his Loan. *Id.* He has not made any subsequent payments. *Id.* On June 13, 2011, CitiMortgage notified Plaintiff by letter that he was in default on his Loan and that he could lose the Property to foreclosure if he did not resume making his monthly mortgage payments. *Id.* ¶ 29.

On June 22, 2011, CitiMortgage paid an additional portion of the Insurance Proceeds through a check made out to Plaintiff in the amount of $13,227.85. *Id.* ¶ 23. Plaintiff deposited the check in his bank account. *Id.* On June 24, 2011, Plaintiff spoke with a representative of CitiMortgage through a Spanish translator and told the representative that he would not make any additional mortgage payments until CitiMortgage released the remaining Insurance Proceeds to him. *Id.* ¶ 31.

On November 2, 2011, CitiMortgage filed in the Circuit Court of Cook County a foreclosure complaint against Plaintiff, his wife, and other parties with interests in the Property. *Id.* ¶ 32. CitiMortgage attached a document entitled "Important Information for Homeowners in Foreclosure," in both English and Spanish, which it served on Plaintiff and his wife. *Id.*

## V. CITIMORTGAGE APPLIES THE REMAINING INSURANCE PROCEEDS TO PLAINTIFF'S OUTSTANDING LOAN BALANCE.

On November 2, 2011, the day that CitiMortgage filed its foreclosure complaint, CitiMortgage's affiliate, CitiFinancial Mortgage Company, Inc. ("CitiFinancial"), prepared a

Broker's Price Opinion ("BPO") concerning the Property. SOF ¶ 33. The BPO reflected that the Property's as-is market value was $13,500 and that its as-repaired market value would be $62,000. *Id.* The BPO noted that the Property "is located in an area of decreasing values and increasing foreclosure and short sale rates." *Id.*

In November 2011, CitiMortgage possessed $89,832.71 remaining from the Insurance Proceeds (the total of $154,590.84 minus the September 2010 disbursement of $51,530.28 and the June 2011 disbursement of $13,227.85). *Id.* ¶ 35. Thus, the remaining Insurance Proceeds far exceeded both the as-is and as-repaired value of the Property in November 2011. *Id.*

On December 5, 2011, CitiMortgage voluntarily withdrew its foreclosure complaint related to the Property. *Id.* ¶ 32. On February 7, 2012, CitiMortgage applied the remaining Insurance Proceeds to Plaintiff's outstanding Loan balance and charged off the Loan. *Id.* ¶ 36.

## LEGAL STANDARD

Fed. R. Civ. P. 56(c) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Bordelon v. Board of Ed. of City of Chicago*, 811 F.3d 984, 989 (7th Cir. 2016). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *see also Bordelon*, 811 F.3d at 989. If the evidence produced by the plaintiff "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). Where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Bordelon*, 811 F.3d at 989 ("[c]onclusory statements" are "not sufficient to avoid summary judgment").

## ARGUMENT

Plaintiff's only remaining claim is Count II of his Second Amended Complaint, which alleges that CitiMortgage breached the Mortgage by applying the Insurance Proceeds to pay off his outstanding debt instead of using them to repair or restore the Property. SOF ¶ 7. The Mortgage is governed by Illinois law. *Id.* ¶ 4(e).

In Illinois, the elements of a breach of contract claim are: "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 786 (7th Cir. 2015). When interpreting the terms of a contract "[a] court will first look to the language of the contract itself to determine the parties' intent." *Thompson v. Gordon*, 948 N.E.2d 39, 46-47 (Ill. 2011). If the terms of the contract are "clear and unambiguous, they must be given their plain, ordinary and popular meaning." *Id.*

CitiMortgage is entitled to summary judgment on Plaintiff's breach of contract claim on at least three independent grounds. The underlying facts for each ground are uncontested. *First*, Plaintiff's claim is barred because Plaintiff failed to comply with the provision in the Mortgage requiring him to give CitiMortgage written notice and an opportunity to cure any alleged breach before bringing suit. *Second*, the undisputed material facts demonstrate that CitiMortgage did not breach the agreement by applying the Insurance Proceeds to pay down Plaintiff's outstanding debt. *Finally*, Plaintiff did not suffer any damages or injury by virtue of having CitiMortgage pay down his debt; instead, he actually benefited.

# I. PLAINTIFF'S CLAIM IS BARRED BY HIS FAILURE TO SATISFY THE NOTICE-AND-CURE PROVISION OF THE MORTGAGE.

As an initial matter, CitiMortgage is entitled to summary judgment because Plaintiff failed to give CitiMortgage written notice and an opportunity to cure the alleged breach. As the Seventh Circuit observed on appeal, section 20 of the Mortgage states that Plaintiff may not:

> …commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from [CitiMortgage's] actions pursuant to this Security Instrument or that alleges that [CitiMortgage] has breached any provision of, or any duty owed by reason of, this Security Instrument, until [Plaintiff] has notified [CitiMortgage] (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded [CitiMortgage] a reasonable period after the giving of such notice to take corrective action.

SOF ¶ 4(f); *see also Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 788 (7th Cir. 2015).

Section 15 of the Mortgage requires that "[a]ll notices given by Borrower ... in connection with this Security Instrument must be in writing. … Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender." SOF ¶ 4(d). The Mortgage lists CitiMortgage's address as "1000 Technology Drive, O'Fallon, MO 63304." *Id.* ¶ 4(a). Accordingly, section 20, in conjunction with section 15, required Plaintiff to provide notice *in writing* to CitiMortgage's listed address prior to filing suit in this case. The undisputed facts show that he failed to do so.

The Seventh Circuit declined to rule on this issue on appeal, noting that the issue had not been litigated below but observed that CitiMortgage "is free to raise" the issue on remand. *Avila*, 801 F.3d at 788. Now that the parties have completed discovery,[1] it is undisputed that Plaintiff

---

[1] According to the Court's Minute Entry of April 6, 2016, fact discovery was extended until July 5, 2016. Dkt. 126. Plaintiff did not seek any discovery from CitiMortgage during this time.

failed to provide CitiMortgage with notice of the alleged breach or with a "reasonable period" to cure the alleged breach before he filed this lawsuit.

Following remand from the Seventh Circuit, CitiMortgage served Plaintiff's counsel with a Request to Admit, asking Plaintiff to admit that he never provided CitiMortgage with the required notice under section 20 of his Mortgage. SOF ¶ 9. Plaintiff never responded to this request and thus conceded that he failed to comply with the notice-and-cure provision of his Mortgage. *Id.*; *see also* Fed. R. Civ. P. 36(a)(3) (a matter is admitted if no response is served within 30 days); *United States v. Kasuboski*, 834 F.2d 1345, 1350 (7th Cir. 1987) (admissions under Rule 36, even default admissions, can serve as the factual predicate for summary judgment); *see also Kasalo v. Rident Asset Management, LLC*, 53 F. Supp. 3d 1072, 1086 (N.D. Ill. 2014) (same). Indeed, CitiMortgage never received any pre-filing notice from Plaintiff and, at his deposition, Plaintiff could not identify any instance in which he provided notice of the alleged breach to CitiMortgage prior to filing this lawsuit. SOF ¶ 8.

Numerous courts have entered judgment against borrowers who failed to comply with identical "notice-and-cure" provisions in their mortgages. For example, in *Niyaz v. Bank of America*, the court cited an identical mortgage provision requiring the borrower to give the lender notice and a reasonable period to cure any alleged breach. 2011 WL 63655, at *2 (E.D. Va. Jan. 3, 2011). Because the borrower had not complied with this provision, the court granted summary judgment in favor of the lender on all of the borrower's claims, which arose from the lender's alleged "actions taken pursuant to" the mortgage agreement. *Id.* The Fourth Circuit affirmed on the same ground. *Niyaz v. Bank of America*, 442 F. App'x 838 (4th Cir. 2011).[2]

---

[2]     Courts throughout the country have reached the same result in interpreting identical mortgage provisions. *See, e.g.*, *Vongohren*, 2016 WL 739070, at *5, n.8 (granting summary judgment on contract claim where borrower failed to satisfy notice-and-cure provision in

As in these cases, Plaintiff is foreclosed from bringing a claim alleging that CitiMortgage breached the Mortgage because Plaintiff failed to satisfy his obligation to provide CitiMortgage with notice and an opportunity to cure the alleged breach before he brought this suit. For this reason alone, CitiMortgage is entitled to summary judgment.

## II.   CITIMORTGAGE DID NOT BREACH THE MORTGAGE AGREEMENT.

Even if Plaintiff's contract claim was not otherwise barred by his failure to comply with the notice-and-cure provision of his Mortgage, the undisputed facts show that CitiMortgage did not violate the Mortgage agreement. Plaintiff's only remaining claim alleges that CitiMortgage breached the agreement by using the Insurance Proceeds to pay down Plaintiff's outstanding debt, rather than repairing or restoring the Property. SOF ¶ 7.

Section 5 of the Mortgage provides that "insurance proceeds ... shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened." *Id.* ¶ 4(b). However, "[i]f the restoration or repair is not

---

mortgage); *In re: Mortg. Elec. Registration Sys. Litig.*, 2016 WL 3976427, at *8, 10 (D. Ariz. July 25, 2016) (same); *Hayes v. Wells Fargo Bank, N.A.*, 2015 WL 5707054, at *4-5 (D. Or. Sept. 28, 2015) (granting judgment on the pleadings on borrower's breach of contract claim for failure to satisfy notice-and-cure provision of mortgage); *Allen v. JPMorgan Chase Bank, N.A.*, 2016 WL 1029334, at *2 (S.D. Miss. Mar. 14, 2016) (dismissing claims arising from borrower's mortgage agreement where borrower failed to comply with notice-and-cure provision); *Charles v. Deutsche Bank Nat'l Trust Co.*, 2016 WL 950968, at *3 (S.D. Fla. Mar. 14, 2016) (same); *Tanner v. Wells Fargo Bank N.A.*, 2016 WL 1060227, at *2 (D. Or. Mar. 11, 2016) (same); *Sotomayor v. Deutsche Bank Nat'l Trust Co.*, 2016 WL 3163074, at *2 (S.D. Fla. Feb. 5, 2016) (same); *Trevathan v. Select Portfolio Serv., Inc.*, 2015 WL 6913144, at *4-5 (S.D. Fla. Nov. 6, 2015) (same); *Hill v. Nationstar Mortg. LLC*, 2015 WL 4478061, at *2 (S.D. Fla. July 2, 2015) (same); *Jessup v. Progressive Fund.*, 35 F. Supp. 3d 25, 36 (D.D.C. 2014) (same); *Spasojevic v. Wells Fargo Bank*, 2014 WL 222942, at *2 (M.D. Fla. Jan. 21, 2014) (same); *Roisland v. Flagstar Bank*, 989 F. Supp. 2d 1095, 1106-07 (D. Or. 2013) (same); *Holtzapfel v. Wells Fargo Bank*, 2013 WL 1337283, at *4 (S.D. W. Va. Mar. 29, 2013) (same); *Higley v. Flagstar Bank*, 910 F. Supp. 2d 1249, 1253-54 (D. Or. 2012) (same); *Kerns v. U.S.*, 2012 WL 5877479, at *4-5 (E.D. Va. Nov. 20, 2012) (same); *Jones v. Bank of Am.*, 2012 WL 405053, at *6 n.8 (E.D. Va. Feb. 7, 2012) (same); *Johnson v. Countrywide Home Loans*, 2010 WL 5138392, at *2 (E.D. Va. Dec. 10, 2010) (same); *Gerber v. First Horizon Home Loans*, 2006 WL 581082, at *2 (W.D. Wash. Mar. 8, 2006) (same).

economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due." *Id.*

As the Seventh Circuit explained, section 5 "exists almost exclusively for CitiMortgage's benefit," as it provides "discretion to CitiMortgage to ensure that repairs are 'economically feasible,' [and] that its 'security is not lessened'" before insurance proceeds are used to repair or restore the Property. *Avila*, 801 F.3d at 784. Accordingly, for Plaintiff's claim to survive summary judgment, Plaintiff must show *both* that repair of the Property was economically feasible *and* that CitiMortgage's security would not have been lessened by repairing the Property. *See Vongohren*, 2016 WL 739070, at *4 (interpreting identical mortgage provision in granting summary judgment for CitiMortgage). As in the recent *Vongohren* case, Plaintiff cannot show that either condition was met, so his claim fails as a matter of law.

## A.    Repair of the Property was not economically feasible.

*First*, there is no genuine dispute of material fact as to whether repair of the Property was economically feasible. Indeed, the court in *Vongohren* recently determined that repair was not economically feasible under materially identical factual circumstances. 2016 WL 739070, at *4-5. As the court explained, the word "economically" modifies the word "feasible" in section 5, such that "economically feasible" means "economically reasonable" or "practical." *Id.* at *4 (citing BLACK's LAW DICTIONARY (10th ed. 2014)).

In *Vongohren*, the court determined that it was neither economically reasonable nor practical for CitiMortgage to use the insurance proceeds to repair the property. *Id.* The court noted that the borrowers had stopped making their mortgage payments and defaulted on their loan. *Id.* In addition, the borrowers had abandoned the property and moved. *Id.* at *5. Moreover, a BPO had determined that the insurance proceeds were worth more as unapplied funds than if they had been directed towards repair of the property. *Id.* Accordingly, given the

borrowers' "refusal to continue making payments, their de facto abandonment of the property, and the projected economic loss of making repairs," the court concluded that there was "no genuine dispute of material fact that it was not 'economically feasible' for Citi[Mortgage] to use the insurance proceeds on repairs." *Id.* Thus, the Court held that summary judgment was appropriate for CitiMortgage "[o]n this ground alone." *Id.*

The same rationale applies here. *First*, Plaintiff was in default for nearly a year before CitiMortgage applied the remaining Insurance Proceeds to his outstanding debt, and Plaintiff had made it clear that he would not resume making his monthly payments. SOF ¶¶ 24, 28. *Second*, Plaintiff abandoned the Property and has not lived there since the fire on July 4, 2010. *Id.* ¶ 10.

*Finally*, in November 2011, after Plaintiff refused to allow Restore to continue the repairs and defaulted on his Loan, CitiMortgage initiated foreclosure proceedings and had a BPO prepared for the Property. *Id.* ¶ 33. The BPO demonstrates that the remaining Insurance Proceeds were worth significantly more as unapplied funds than if they were applied to repair the Property. *Id.* ¶ 35. At the time of the BPO, CitiMortgage possessed $89,832.71 remaining from the Insurance Proceeds. *Id.* However, the BPO reflected that the Property's as-is market value was only $13,500 and that its as-repaired market value would be only $62,000. *Id.* ¶ 33. Plaintiff does not contest either of these valuations. *Id.* Thus, it would have been economically infeasible for CitiMortgage to use $89,832.71 to repair the Property that would be worth, at most, $62,000 after the repairs. *Id.* ¶ 35.

Accordingly, as in *Vongohren*, repair of the Property was not economically feasible. For this reason alone, CitiMortgage is entitled to summary judgment on Plaintiff's contract claim.

**B.     CitiMortgage's security interest would have been lessened if the Insurance Proceeds were used to repair the Property.**

*Second*, even assuming for the sake of argument that repair of the Property was economically feasible, the evidence shows that CitiMortgage's security interest in the Property would have been lessened if the remaining Insurance Proceeds had been used for repairs.

Again, the court in *Vongohren* reached the same result under materially identical facts. 2016 WL 739070, at *5.  The court explained that the BPO showed an economic loss of "anywhere between $8,000 and $32,500" if the insurance proceeds were used for repairs.  *Id.* Accordingly, "forcing Citi[Mortgage] to repair the property would lessen the value of Citi[Mortgage's] security interest in the property, and on this independently sufficient ground, summary judgment is appropriate for Citi[Mortgage] on the Vongohrens's breach of contract claim."  *Id.* (citing *In re Hill*, 2011 WL 6936357, at *12 (Bankr. S.D. Tex. Dec. 30, 2011)).

Again, the same rationale applies here.  The BPO showed that the Property would be worth, at most, $62,000 after repairs.  SOF ¶ 33.  As noted above, Plaintiff does not contest this evaluation.  *Id.*  This would result in a loss of over $27,000 if the remaining Insurance Proceeds were used for the repairs.  *Id.* ¶ 35.  Moreover, Plaintiff's outstanding debt at the time was equal to $89,832.71, the value of the remaining Insurance Proceeds.  *Id.* ¶ 36.  Accordingly, if the Insurance Proceeds were used for repairs, the Property would have been worth less than Plaintiff's outstanding debt to CitiMortgage.  *Id.* ¶¶ 33, 35-36.

Thus, as in *Vongohren*, CitiMortgage's security interest in the Property would have been lessened if CitiMortgage were forced to use the Insurance Proceeds to repair the Property.  For this additional reason, CitiMortgage is entitled to summary judgment.

**III.    PLAINTIFF DID NOT SUFFER ANY DAMAGES OR INJURY.**

Finally, even if Plaintiff's breach of contract claim could otherwise survive summary judgment (and, as shown above, it cannot for multiple reasons), CitiMortgage would nonetheless be entitled to summary judgment because Plaintiff did not suffer any damages or injury as a result of the alleged breach.  It is well established that "Illinois law … requires a showing of damages to succeed on a breach of contract claim."  *U.S. Gypsum Co. v. LaFarge N. Am., Inc.*, 508 F. Supp. 2d 601, 639 (N.D. Ill. 2007) (collecting cases); *see also In re Polo Builders*, 2006 WL 1749619, at *3 (Bankr. N.D. Ill. June 21, 2006) ("Injury is an essential element. If a plaintiff fails to prove an injury, he cannot prevail on his breach of contract claim." (citing *Krislov v. Aetna Plywood, Inc.*, 1999 WL 1251530, at *4 (N.D. Ill. Dec. 20, 1999)).

Plaintiff cannot show that he suffered any injury or damages in this case.  CitiMortgage previously raised this argument in its initial motions to dismiss ([Dkt. # 18], at p. 7) and reply ([Dkt. # 42], at pp. 9-10).  The Court declined to grant CitiMortgage's motion to dismiss on this ground ([Dkt. # 50], at p. 3), but the Seventh Circuit specifically noted that CitiMortgage could litigate the issue on remand.  801 F.3d at 788.  It is now clear from the undisputed factual evidence that Plaintiff suffered no damages as a result of the alleged breach by CitiMortgage. Instead, he benefited by being relieved of his outstanding debt.

In February 2012, Plaintiff owed $89,832.71 on his Loan.  SOF ¶ 36.  After CitiMortgage applied the Insurance Proceeds to the Loan, Plaintiff did not owe any money on the Loan.  *Id.* Accordingly, Plaintiff was not injured by the application of the Insurance Proceeds to his outstanding debt.   Indeed, the *Vongohren* court reached the same conclusion under nearly identical facts, holding that the plaintiffs "cannot show actual injury."  2016 WL 739070, at * 6.

Moreover, Plaintiff not only suffered no damages from CitiMortgage's application of the remaining Insurance Proceeds to his outstanding debt, he actually *benefited* from such

application. In February 2012, Plaintiff owed CitiMortgage $89,832.71. SOF ¶ 36. As shown by the BPO, the Property would have been worth only $62,000 after repairs. *Id.* ¶ 33. Accordingly, if CitiMortgage had used the remaining Insurance Proceeds to repair the Property, Plaintiff would have continued to owe CitiMortgage $89,832.71 and would have had a Property valued at significantly less. Thus, Plaintiff is undeniably better off because CitiMortgage applied the remaining Insurance Proceeds to his outstanding debt.

Additionally, Plaintiff received $10,000 from the initial draw of the Insurance Proceeds when Restore wrote Plaintiff a check in this amount. *Id.* ¶ 18. Plaintiff then received an additional $13,227.85 from the Insurance Proceeds when CitiMortgage wrote him a check in June 2011. *Id.* ¶ 23. Plaintiff deposited both of these payments—a total of $23,227.85—in his bank account when he received them. *Id.* ¶¶ 18, 23. Thus, Plaintiff was not only relieved of his outstanding debt to CitiMortgage, he also received a $23,000 windfall out of the Insurance Proceeds. For these reasons, there is no genuine dispute of material fact that Plaintiff suffered no damages or injury as a result of CitiMortgage's alleged breach of the Mortgage agreement. For this additional reason, CitiMortgage is entitled to summary judgment.

## CONCLUSION

For the reasons set forth above and in the accompanying Statement of Undisputed Material Facts, CitiMortgage is entitled to summary judgment on Plaintiff's only remaining claim, his claim for breach of contract.

Dated: August 3, 2016                    Respectfully submitted,

CITIMORTGAGE, INC.

By: /s/ Thomas V. Panoff
      Lucia Nale
      Thomas V. Panoff
      Christopher S. Comstock

Joseph M. Callaghan
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois  60606-4637
Telephone: (312) 782-0600
Facsimile:  (312) 701-7711
lnale@mayerbrown.com
tpanoff@mayerbrown.com
ccomstock@mayerbrown.com
jcallaghan@mayerbrown.com

*Counsel for Defendant CitiMortgage, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on August 3, 2016, the foregoing was filed on the CM/ECF system, which will provide notice to counsel of record in this matter.

Dated: August 3, 2016

By: /s/ Thomas V. Panoff
Thomas V. Panoff

*Counsel for Defendant CitiMortgage, Inc.*